OPINION
{¶ 1} The defendant-appellant, Randy L. Sawmiller ("Sawmiller"), appeals the May 13, 2005 Judgment of sentence from the Court of Common Pleas of Auglaize County, Ohio.
 {¶ 2} On December 26, 2004, Sawmiller went to the home of his grandmother, Laura Ellis located in St. Mary's, Auglaize County, Ohio, to return her snow shovel he had borrowed and to assist her in removing snow from her back deck. Sawmiller arrived with James Robert Meyers ("Meyers") in Meyers' van. Meyers stayed in his van while Sawmiller cleared the back deck, then both Sawmiller and Meyers entered Laura Ellis' home. They sat and talked for a brief period of time and Sawmiller drank a glass of water and had a cigarette with his grandmother. While Sawmiller was visiting with his grandmother, Meyers used the restroom. Before leaving Laura Ellis' home to return to Meyers' residence, Sawmiller used the restroom.
 {¶ 3} A few hours later, Laura Ellis went to take MS Contin that had been prescribed to her several days earlier upon her release from the hospital. MS Contin is a time release morphine tablet that is a Schedule II substance. She discovered that her medication was missing and contacted the St. Mary's Police Department requesting they come and take fingerprints from her medicine cabinet so she could locate her medicine. She wanted the fingerprints taken so she could determine whether it had been one of the two boys that had visited her who had taken the medicine. She also notified her daughter, Sawmiller's mother that she was missing her prescription medication. Sawmiller's mother contacted Sawmiller and informed him that Laura Ellis' prescription was missing. He did not provide any information nor return the prescription.
 {¶ 4} Deputy Brian Little ("Deputy Little") was dispatched to Laura Ellis' residence in Columbia Square Trailer Park community. Once at her residence, he learned that Sawmiller and Meyers were the only two individuals who had been at her residence earlier that day. He continued the investigation by looking in the bathroom and observing the medicine cabinet but decided that it was not possible to get fingerprints off of the medicine cabinet due to the texture of the cabinet. After conducting the investigation, Deputy Little went to the St. Mary's Police Department and advised them that if they happened to come across Sawmiller or Meyers to temporarily detain them until he could speak with them.
 {¶ 5} A short time later, Patrolman Andrew Liming ("Patrolman Liming") came across Sawmiller and Meyers at Lena Mount's residence. Lena Mount was the fiancé of Meyers. Once Deputy Little arrived, he and Patrolman Liming approached the residence and with permission from Lena Mount the St. Mary's Police Department and the Auglaize County Sheriff's Office searched the home. Deputy Little took Meyers out to his cruiser to talk to him. Meyers provided a confession indicating that Sawmiller took the drugs from Laura Ellis' house and gave half of the pills to him. Meyers stated that he had placed his half in a Krazy Glue container that was located on top of the cupboard in the kitchen. Deputy Little secured the Krazy Glue container and found the pills. Meyers also informed Deputy Little that Sawmiller had the remaining pills.
 {¶ 6} Deputy Little placed Sawmiller and Meyers in custody and transported them to the Auglaize County Justice Center. While enroute, the two were whispering back and forth to one another while in the back of the cruiser. Upon arrival at the jail, Meyers informed the officer that Sawmiller had told him that Sawmiller hid the other half of the pills in the trash can near the closet where he was hiding when the officers arrived at the Lena Mount residence. The St. Mary's Police Department located the pills, the bottle and the peeled off label displaying the prescription information for Laura Ellis.
 {¶ 7} Sawmiller admitted that he had ingested some pills earlier on the day of December 26, 2004. Test results from blood taken from Sawmiller early on December 27, 2004 tested positive for opiates. On December 27, 2004, an initial appearance occurred in the Auglaize County Municipal Court. Sawmiller, Meyers and Lena Mount were charged with possession of drugs and Sawmiller was also charged with the theft of the drugs. At this initial appearance, Sawmiller stated the following:
Sawmiller: Mr, Mr. Herman, I'd like to come to, I'd like toadmit to the charge.
 Court: Okay, okay this is not the point in which you do it.Let me explain something — okay — okay — okay.
 Sawmiller: Well, well I think I should be able to admit to itwhile people are here and people can hear what I have to say.
 Court: Okay, okay. But. Just. You just. Sit. Okay just have aseat because I need to explain things before you say anything.Okay. So let me go through things, I understand what you want todo, but you . . . have a seat first.
* * *
Sawmiller: Okay, I stole, I stole the pills. How about that. Istole the pills and this man right here didn't, and this ladyright here didn't. Randy Sawmiller, 268769016, stole the pills
 Court: okay.
 Sawmiller: You understand that.
 Court: Yes, sir.
 Sawmiller: That's what I want out my chest, cause I don't likeother people getting blamed for something they did not do.
 Court: Okay.
 Sawmiller: I did that.
* * *
Sawmiller: I did it.
* * *
Sawmiller: Well, well just guess what? I'm guilty of this oneand I'm guilty of this one, so get it on.
In conclusion, the municipal court set bond for Sawmiller and stated it would schedule the matter for a preliminary hearing.
 {¶ 8} On January 12, 2005, the Auglaize County Grand Jury indicted Sawmiller for one count of theft of a dangerous drug in violation of R.C. 2913.02(A)(1)(B)(6), a felony of the third degree; one count of possession of drugs in violation of R.C.2925.11(A)(C)(1)(a), a felony of the fifth degree; and one count of trafficking in drugs in violation of R.C.2925.03(A)(1)(C)(1)(b), a felony of the third degree.
 {¶ 9} On March 21, 2005, the matter proceeded to a bench trial. On March 22, 2005, the trial court entered guilty verdicts to three counts: Count I — Theft of dangerous drug in violation of R.C. 2913.02(A)(1)(B)(6), a felony of the third degree; Count II — Possession of drugs in violation of R.C.2925.11(A)(C)(1)(a), a felony of the fifth degree; and Count III — Trafficking in drugs in violation of R.C.2925.03(A)(1)(C)(1)(b), a felony of the third degree. Also, on this date, the trial court ordered a pre-sentence investigation and continued the matter for sentencing.
 {¶ 10} On May 12, 2005, the trial court imposed a prison term of four years for the offenses of theft of a dangerous drug and drug trafficking, with said sentences to run concurrently with one another, and imposed a prison term of eleven months for the possession of drugs, to be served consecutively with the four year term. The sentencing was journalized on May 13, 2005. On June 8, 2005, Sawmiller filed a notice of appeal. Sawmiller now appeals, asserting a sole assignment of error:
THE CONVICTIONS IN COUNT ONE AND THREE ARE AGAINST THEMANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} Sawmiller argues that the convictions in Count I and III are against the manifest weight of the evidence. The trial court convicted Sawmiller of theft of a dangerous drug in violation of R.C. 2913.02(A)(1)(B)(6) and trafficking in drugs in violation of R.C. 2925.03(A)(1)(C)(1)(b), both felonies of the third degree.
 {¶ 12} Pursuant to R.C. 2913.02,
(A) No person, with purpose to deprive the owner of propertyor services, shall knowingly obtain or exert control over eitherthe property or services * * * (1) without the consent of theowner or person authorized to give consent.
* * *
(B)(6) If the property stolen is any dangerous drug, aviolation of this section is theft of drugs, a felony of thefourth degree, or, if the offender previously has been convictedof a felony drug abuse offense, a felony of the third degree.
Also, according to R.C. 2925.03,
(A)No person shall knowingly * * * (1) Sell or offer to sell acontrolled substance
 (C) Whoever violates division (A) of this section is guilty * * *(1) If the drug involved in the violation is any compound,mixture, preparation, or substance included in schedule I orschedule II, with the exception of marihuana, cocaine, L.S.D.,heroin, and hashish, whoever violates division (A) of thissection is guilty of aggravated trafficking in drugs. The penaltyfor the offense shall be determined as follows:
 (a) Except as otherwise provided in division (C)(1)(c), (d),(e), or
 (f) of this section, if the offense was committed in thevicinity of a school or in the vicinity of a juvenile, aggravatedtrafficking in drugs is a felony of the third degree, anddivision (C) of section 2929.13 of the Revised Code applies indetermining whether to impose a prison term on the offender.
 {¶ 13} When reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 14} In contrast, in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial and determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in light most favorable tothe prosecution, any rational trier of fact could have found theessential elements of the crime proven beyond a reasonabledoubt.
 {¶ 15} As stated above, Sawmiller confessed to the crimes during the initial appearance by stating:
Sawmiller: Mr, Mr. Herman, I'd like to come to, I'd like toadmit to the charge.
* * *
Sawmiller: Well, well I think I should be able to admit to it
* * *
* * *
Sawmiller: Okay, I stole, I stole the pills. * * * RandySawmiller, 268769016, stole the pills.
* * *
Sawmiller: I did that.
* * *
Sawmiller: I did it.
 {¶ 16} During Meyers' testimony on March 21, 2005, he relayed the facts and circumstances of the initial appearance where Sawmiller made the confessions trying to exonerate Meyers and Lena Mount from being charged with the crimes. Also, Lena Mount provided testimony regarding Sawmiller's confession before Judge Herman at the initial appearance.
 {¶ 17} Sawmiller's statements made at the initial appearance before the municipal court contradict the statements he made in his direct and cross examination at his trial on March 22, 2005. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison
(1990), 49 Ohio St.3d 182, certiorari denied (1990),498 U.S. 881, 111 S.Ct. 228. In this case, the trial court heard contradictory statements and had the opportunity to consider these statements in determining Sawmiller's credibility.
 {¶ 18} In addition to the above mentioned evidence, Meyers testified that on December 26, 2004, prior to arriving at Laura Ellis' residence, Sawmiller made statements regarding her "new pills" of MS Contin. He then testified that he believed that the reason for going to Laura Ellis' residence was for Sawmiller to steal some of Laura Ellis' pills. After leaving the Laura Ellis' residence, Meyers testified that Sawmiller presented him with drugs still in a bottle with Laura Ellis' name on it and Sawmiller said "Look what I got." Meyers replied to Sawmiller by stating that "[you] shouldn't have took the whole bottle if [you] was takin' `em." Meyers further testified that Sawmiller eventually gave him 16 pills that he placed in a Krazy glue container on top of the cupboard in the kitchen. He also identified the exhibit containing the pills and the Krazy glue container in court. Furthermore, he testified that he had told Deputy Little that the remaining pills could be located in the trash can near the closet where Sawmiller had been hiding when the officers arrived at the Lena Mount residence.
 {¶ 19} In addition, Patrolman Liming testified that he did find the prescription pill bottle with the label partially ripped off in the trash can near the closet where he had seen Sawmiller hiding on December 26, 2004 when he and Deputy Little had approached the Lena Mount residence. He further testified that he placed the prescription pill bottle into an evidence bag once it was located and marked on the bag to identify that he had taken possession of the pill bottle. He also conducted the same procedure with the partially removed label pieces from the prescription pill bottle. During his testimony in court, he identified the prescription pill bottle and the labels.
 {¶ 20} Lena Mount also testified about the events of December 26, 2004. She stated that Meyers and Sawmiller had left to go to Laura Ellis' residence and when they returned they had pills. She stated that Sawmiller shook the bottle at her and stated "Oxys, they're oxys." Later on that day, she and Sawmiller consumed one of the pills and she provided a step by step analysis about sharing the drugs with Sawmiller.
 {¶ 21} Finally, Laura Ellis testified that she did not give Sawmiller permission to use any of her prescription drugs, nor had she ever given him any of her prescription drugs in the past.
 {¶ 22} In sum, in reviewing the totality of the evidence, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice. Furthermore, after viewing the entire record and the evidence in the light most favorable to the State, we can say that a rationale trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 23} Accordingly, the assignment of error is overruled and the judgment and sentence of the Court of Common Pleas of Auglaize County is affirmed.
Judgment affirmed.
 Bryant and Rogers, JJ., concur.